# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES A. ROGERS,<br><br>            Plaintiff,<br><br>      vs.<br><br>N. EMERSON,<br><br>            Defendants. | 1:12cv01827 AWI DLB PC<br><br>FINDINGS AND RECOMMENDATIONS REGARDING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT<br>(Documents 59, 61)<br><br>THIRTY DAY OBJECTION DEADLINE |

## I. PROCEDURAL HISTORY

Plaintiff Charles A. Rogers ("Plaintiff") is a prisoner proceeding pro se in this civil rights action. Defendants paid the filing fee and removed the action to this Court on November 7, 2012. Pursuant to the Court's June 20, 2013, order, this action is proceeding on the following cognizable claims: (1) retaliation in violation of the First Amendment against Defendant Emerson; and (2) negligence against Defendant Goss.

Plaintiff filed a motion for summary judgment on January 15, 2014. Defendants filed an opposition and cross-motion for summary judgment on January 19, 2014.[1] The motions are fully

---

[1] Concurrently with their cross-motion for summary judgment, Defendants served Plaintiff with the requisite notice of the requirements for opposing the motion. Woods v. Carey, 684 F.3d 934, 939-41 (9th Cir. 2012); Rand v. Rowland, 154 F.3d 952, 960-61 (9th Cir. 1998).

1

briefed and are now submitted on the record pursuant to Local Rule 230(l).  Also before the Court are the parties' evidentiary objections, which the Court will address throughout these findings, as necessary.

## II.     LEGAL STANDARD

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mutual Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011).  Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact.  Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).  The Court may consider other materials in the record not cited to by the parties, but it is not required to do so.  Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

In resolving cross-motions for summary judgment, the Court must consider each party's evidence.  Johnson v. Poway Unified School Dist., 658 F.3d 954, 960 (9th Cir. 2011), cert. denied, 132 S.Ct. 1807 (2012).  Plaintiff bears the burden of proof at trial, and to prevail on summary judgment, he must affirmatively demonstrate that no reasonable trier of fact could find other than for him.  Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007).  Defendants do not bear the burden of proof at trial and in moving for summary judgment, they need only prove an absence of evidence to support Plaintiff's case.  In re Oracle Corp. Securities Litigation, 627 F.3d 376, 387 (9th Cir. 2010).

In judging the evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, <u>Soremekun</u>, 509 F.3d at 984 (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, <u>Comite de Jornaleros de Redondo Beach v. City of Redondo Beach</u>, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted), cert. denied, 132 S.Ct. 1566 (2012).

### III.   SUMMARY OF PLAINTIFF'S ALLEGATIONS[2]

Plaintiff alleges that on October 24, 2011, Defendant Emerson searched his cell. Plaintiff filed an inmate appeal against Defendant Emerson for property damage, and because of the condition in which he left Plaintiff's cell.

On December 14, 2011, Defendant Emerson returned to search Plaintiff's cell, stating, "What are the odds I get to come back to this cell?" Compl. 3. He asked Plaintiff's cellmate which shelf his things were on, and then went straight to Plaintiff's shelf. Plaintiff immediately approached Defendant Goss, Defendant Emerson's supervisor, and relayed his concerns that Defendant Emerson was retaliating against him for filing the appeal. Defendant Goss stated, "Cool." Compl. 3.

Defendant Emerson came downstairs with all of Plaintiff's compact discs ("CDs"). Plaintiff had the same amount of compact discs during the last cell search in October. Defendant Emerson told Plaintiff to choose twelve discs and decide what he wanted to do with the rest. Plaintiff chose to destroy the remainder of the discs, and he destroyed 98 discs in the presence of Defendant Emerson and others.

---

[2] Defendants move to strike certain paragraphs of Plaintiff's complaint, including those where he alleges that Defendant Emerson retaliated against him. While the Court recognizes that a verified complaint may be used as an affidavit for purposes of summary judgment, the Court will not strike any portion of Plaintiff's complaint. The Court is capable of determining the relevancy and admissibility of any evidence at issue, and certainly the Court can determine the difference between a pro se Plaintiff's allegation and a statement of fact.

IV.     **UNDISPUTED MATERIAL FACTS**[3]

Department Operations Manual ("DOM") Procedures

The California Substance Abuse Treatment Facility ("SATF"), where Plaintiff is incarcerated, follows the operations procedures set forth in the DOM. Black Decl. ¶ 3.

Under DOM Section 54030.1, inmates are permitted to possess, in their living quarters, state-issued and authorized personal property as established in the Authorized Personal Property Schedule ("APPS") set forth in Section 54030.17. The APPS is the primary reference for allowable inmate property and identifies limitations on the number of items allowed. Black Decl. ¶ 5, Ex. A.

The APPS for SATF is set forth in Section 54030.19. Black Decl. ¶ 6, Ex. B. Under Section 54030.19.5, inmates housed at SATF are allowed a maximum of ten (10) CDs. Black Decl. ¶ 7, Ex. C; Goss Decl. ¶ 23.[4]

Under Section 54030.10.11, anything not permitted, or in excess of the permitted maximum, is contraband and will result in confiscation. Black Decl. ¶ 8, Ex. D. Under Section 54030.12.2, unauthorized inmate property, including property that exceeds volume limitations, shall be disposed of by any of the following methods: (1) mail the items to an address provided by the inmate, at the inmate's expense; (2) return the items to sender at the inmate's expense; (3) donate the items to charitable organization or to the facility; or (4) render the items useless and dispose of them according to facility procedures. Black Decl. ¶ 9, Ex. E.

---

[3] Facts which are immaterial to resolution of the parties' motions for summary judgment, unsupported by admissible evidence, and/or redundant are omitted.

Plaintiff also filed "supplemental facts" after Defendants filed their cross-motion and opposition. Defendants dispute those facts and argue that supplements are not permitted by the Local Rules. The Court finds that the supplemental facts are not material, however, and need not rule on Defendants' request to strike.

[4] Plaintiff does not dispute the contents of the section. He argues, however, that prison officials do not have to follow the regulations, and that individual facilities are permitted to depart from the regulations as they see fit. Plaintiff provides no evidence to support this contention other than his own speculation. Moreover, it is undisputed that SATF follows the operating procedures set forth in the DOM.

4

Plaintiff admits that he is not authorized to possess more than twelve (12) CDs at a time, and that he is not permitted to possess one hundred and ten (110) CDs.[5]  Pl.'s Dep. 24:23-24.

Pursuant to Section 52050.14 and 52050.16, housing units can be searched at any time. Black Decl. ¶ 18, Ex. G.  When a facility is placed on lockdown, unit-wide searches are conducted to locate any and all contraband.  Black Decl. ¶ 19.

October 24, 2011, Search

In 2011, Defendant Goss was assigned as a Yard Sergeant in SATF's D-facility.  His duties included supervising and conducting daily searches and inspection of the cells.  Goss Decl. ¶¶ 1-3.  In 2011, Defendant Emerson was assigned as a Correctional Officer in SATF's D-facility, Building 3.  Building 3 is next to Building 2.[6]  Emerson Decl. ¶¶ 1-3; Pl.'s Dep. 31:25-32:5.

On October 24, 2011, D-facility was on lockdown.  Goss Decl. ¶ 8; Emerson Decl. ¶ 8. Defendant Emerson searched a cell, which he later learned belonged to Plaintiff.  Emerson Decl. ¶ 11.  During the search, Defendant Emerson located contraband items consisting of a typewriter, altered cable wire, screws and nuts, two ink pads and liquid, extra state clothes and one hundred fifty pages of paper in excess of the allotted amount.  Defendant Emerson noted these items on a contraband receipt.  Emerson Decl. ¶ 12, Ex. I; Pl.'s Dep. 20:9-21:23.  Plaintiff elected to destroy the contraband, except for the typewriter, which was returned to the SATF education department. Emerson Decl. ¶ 13.

Plaintiff filed a grievance against Defendant Emerson related to the condition his cell was in after the search.  Pl.'s Decl. ¶ 2; Pl.'s Dep. 26:7-14.

---

[5] The DOM states that ten (10) CDs is the maximum number allowed, though the parties appear to cite either (10) or twelve (12) as the allowable limit.  The exact number is not relevant, however, as it is undisputed that Plaintiff was not allowed to possess over one-hundred (100) CDs.

[6] Plaintiff contends that the building he is housed in, as well as the building where Defendant Emerson is assigned, is not relevant.  Plaintiff's objection is overruled.  Fed.R.Evid. 401.  In any event, Plaintiff does not provide evidence to dispute this fact *and* he testified these facts.  Pl.'s Dep. 31:1-3, 31:25-32:5.

Defendant Goss is familiar with Plaintiff because he was an inmate in Building 2. Goss Decl. ¶ 10. Defendant Goss did not have any interactions with Plaintiff on October 24, 2011. Goss Decl. ¶ 11.

Defendant Goss was not aware that Plaintiff had filed a grievance against Defendant Emerson related to the October 24, 2011, search. Goss Decl. ¶ 12. Plaintiff did not complain about Defendant Emerson to Defendant Goss between October 24, 2011, and December 13, 2011. Goss Decl. ¶ 13.

Defendant Emerson is aware that Plaintiff filed a grievance against him related to the October 24, 2011, search. Emerson Decl. ¶ 16. Plaintiff did not have any contact with Defendant Emerson between October 24, 2011, and December 13, 2011, though he may have seen him on the yard. Pl.'s Dep. 31:24. Defendant Emerson does not hold any animosity towards Plaintiff for filing any grievances against him. Emerson Decl. ¶ 16.

December 14, 2011, Search

On December 14, 2011, D-facility was placed on lockdown. Goss Decl. ¶ 16; Pl.'s Dep. 32:23-25. Defendant Emerson went to Building 2 to search cells.[7] Emerson Decl. ¶ 24. He did not know in which cell Plaintiff was housed.[8] Emerson Decl. ¶ 25. Defendant Emerson recalls entering a cell and seeing Plaintiff and his cellmate in the cell. Emerson Decl. ¶ 26.

Plaintiff carried his mattress downstairs to be x-rayed and did not see Defendant Emerson search his cell.[9] Pl.'s Dep. 36:16-37:2.

---

[7] Plaintiff contends that this fact is irrelevant, though he does not dispute it. Plaintiff's objection is overruled. Fed.R.Evid. 401.

[8] Plaintiff disputes this fact and cites to his declaration and the declaration of Inmate White. However, these declarations do not demonstrate that Defendant Emerson knew which cell was Plaintiff's prior to entering his cell. Accordingly, the fact is undisputed.

[9] Plaintiff disputes this fact and cites his declaration in support. However, Plaintiff's declaration does not indicate that he saw Defendant Rogers search his cell. Moreover, Plaintiff repeatedly testified at his deposition that he did *not* see Emerson search his cell. Pl.'s Dep. 36:16-37:2. This fact is therefore undisputed.

6

Upon entering the cell, Defendant Emerson located some cardboard, which inmates are not allowed to have, and a large stack of CDs. The stack of CDs appeared to be in excess of the allowable number of CDs. Emerson Decl. ¶ 28. Defendant Emerson retrieved the cardboard and CDs and proceeded to where Plaintiff and other inmates were waiting for the cell searches to be completed. Emerson Decl. ¶ 29; Pl.'s Dep. 38:7-8. Defendant Emerson advised Plaintiff to pick ten CDs and asked him whether he wanted to mail the remaining CDs home, or whether he wanted to donate them. Emerson Decl. ¶ 32; Pl.'s Dep. 38:21-24.

Plaintiff picked out the 12 CDs that he wanted to keep and then broke the rest in half, one by one. Pl.'s Dep. 40:1-5; Pl.'s Decl. ¶ 9. Defendant Emerson did not tell Plaintiff to destroy the CDs. Emerson Decl. ¶ 34.

At some point on Dec. 14, 2011, Plaintiff complained to Defendant Goss that he was being harassed by Emerson because he had filed a grievance against him. Goss Decl. ¶ 25.

Plaintiff was not stopped or thwarted in filing either of his grievances related to the searches, and all appeals were processed to the Director's Level. Pl.'s Dep. 47:21-48:13.

## V. DISCUSSION

### A. First Amendment Retaliation

#### 1. *Legal Standard*

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim. Silva v. Di Vittorio, 658 F.3d 1090, 1104 (9th Cir. 2011); Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a

legitimate correctional goal." Rhodes, 408 F.3d at 567-68; accord Watison v. Carter, 668 F.3d 1108, 1114-15 (9th Cir. 2012); Silva, 658 at 1104; Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009).

Plaintiff must show that his pursuit of his grievance against Defendant Emerson was the *substantial* or *motivating* factor in Emerson's confiscation of Plaintiff's CDs. Brodheim, 584 F.3d 1262, 1271 (9th Cir. 2009) (citing Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989)). In this Circuit, Plaintiff need "only put forth evidence of retaliatory motive that, taken in the light most favorable to him, presents a genuine issue of material fact as to" Defendant's motivation. Brodheim, 584 F.3d at 1271 (citing Bruce v. Ylst, 351 F.3d 1283, 1289 (9th Cir. 2003)) (internal quotation marks omitted). This requires Plaintiff to offer either direct evidence of retaliatory motive or at least one of three general types of circumstantial evidence: (1) proximity in time between the protected conduct and the alleged retaliation, (2) expressed opposition to the conduct, or (3) other evidence that the reasons proffered by Defendant for the adverse action were false and pretextual. McCollum v. California Dept. of Corr. Rehab., 647 F.3d 870, 882 (9th Cir. 2011) (citing Allen v. Iranon, 283 F.3d 1070, 1077 (9th Cir. 2002)) (quotation marks omitted).

Plaintiff must also demonstrate "that there were no legitimate correctional purposes motivating the actions he complains of," Pratt, 65 F.3d at 808, and the Court must "'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory," id. at 807 (quoting Sandin v. Conner, 515 U.S. 472, 482, 115 S.Ct. 2293 (1995)). In evaluating the existence of a legitimate correctional goal, there must be a valid, rational connection between the rule, regulation, or action and the legitimate, neutral governmental interest put forward to just it. Brodheim, 584 F.3d at 1272-73 (citing Shaw v. Murphy, 532 U.S. 223, 228, 121 S.Ct. 1475 (2001)) (quotation marks omitted). In addition, courts should consider (1) the existence of alternate means of

exercising the right available to inmates; (2) the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and (3) the absence of ready alternatives available to the prison for achieving the governmental objectives.  Id. (citing Shaw, 532 U.S. at 228) (quotation marks omitted).

        2.    *Analysis*

In this case, there is no question that confiscation of property constitutes an adverse action, see Brodheim, 584 F.3d at 1270, or that filing prison grievances is protected conduct, Watison, 668 F.3d at 1114-15; Brodheim, 584 F.3d at 1269.  The critical inquires in this case relate to 1) Defendant's motive in confiscating the CDs; and 2) the existence of a legitimate correctional goal underlying the confiscation.

Plaintiff's argument is based on his belief that Defendant Emerson retaliated against him for filing a grievance by searching his cell and taking his excess CDs.[10]  However, the undisputed evidence prevents a finding "that no reasonable trier of fact could find other than for him."  Soremekun, 509 F.3d at 984.

It is undisputed that under the applicable regulations, Plaintiff was not permitted to have as many CDs as he had in his possession.  It is undisputed that Defendant Emerson was permitted to search his Plaintiff's cell for contraband during both the October and December 2011 lockdowns.  It is also undisputed that Defendant Emerson, after finding the excess CDs, offered Plaintiff the proper options for disposal.  Although Plaintiff opted to destroy his CDs, it is undisputed that Defendant Emerson did not force him to do so.

Plaintiff's retaliation argument is supported by nothing more than speculation.  He suggests that Defendant Emerson retaliated against him because he walked into his cell and asked, "What are the odds of me coming back here?"  Plaintiff also contends that Defendant

---

[10] In part of their argument, Defendants contend that Plaintiff was not engaged in protected conduct by possessing an unauthorized number of CDs.  This is not Plaintiff's argument, however, and the Court will not address it further.

Emerson asked his cellmate where his property was located, and then went directly to searching Plaintiff's property. Pl.'s Dep. 34:17-24. Defendant Emerson disputes that he said anything upon entering, other than to tell Plaintiff and his cellmate to take their mattresses to be x-rayed. Emerson Decl. ¶ 27.

Even though Defendant Emerson's statements are disputed, his statements are not material because, even if Plaintiff's version of events is correct, it does not establish that Plaintiff's grievance was the substantial or motivating factor behind the search and/or confiscation of his CDs. As explained above, Defendant Emerson was searching cells during a lockdown and he was permitted to confiscate contraband.

Plaintiff next supports his retaliation argument with the fact that Defendant Emerson did not confiscate the CDs during the October 2011 search. Defendant Emerson states that he did not locate the CDs during the October 2011 search, but Plaintiff argues that the CDs are difficult to hide. Emerson Decl. ¶ 14. Plaintiff also contends that Defendant Emerson told him during the October 2011 search that he could have taken the CDs, but he would let Plaintiff keep them. Pl.'s Dep. 21:5-7. Even if true, these facts again fail to satisfy the causation requirement. Simply because Defendant Emerson may have allowed Plaintiff to keep the contraband in October does not translate into a finding that his confiscation in December was based on a retaliatory motive.

Plaintiff also points to his belief that in 2005, D-Facility inmates were allowed to have as many CDs as they wanted. Defendants dispute this fact. Again, however, the fact is not material. What may have been permitted in 2005 does not, in any way, relate to Defendant Emerson's actions in December 2011.

Simply put, Plaintiff's "facts" underlying his retaliation argument are speculative, at best, and do not demonstrate that his grievance was the substantial or motivating factor in the confiscation of Plaintiff's CDs. The Court recognizes that retaliation can be shown through

circumstantial evidence, but Plaintiff's evidence fails to rise to the necessary level.  Rather, the undisputed facts demonstrate that Defendant Emerson was permitted to search Plaintiff's cell and confiscate his excess CDs.  Defendant Emerson searched his cell in December 2011, finding multiple items of contraband.  As to the excess CDs, Defendant Emerson asked Plaintiff how he wanted to dispose of them.  Plaintiff opted to destroy them by breaking them in half.  Defendant Emerson was permitted to confiscate the CDs and Plaintiff makes no argument that property limits do not serve a legitimate penological purpose.

Accordingly, Plaintiff has failed to carry his burden and Defendants are entitled to summary judgment on this claim.

B.   Negligence

1.   *Legal Standard*

"Under California law, '[t]he elements of negligence are: (1) defendant's obligation to conform to a certain standard of conduct for the protection of others against unreasonable risks (duty); (2) failure to conform to that standard (breach of duty); (3) a reasonably close connection between the defendant's conduct and resulting injuries (proximate cause); and (4) actual loss (damages).'"  Corales v. Bennett, 567 F.3d 554, 572 (9th Cir. 2009) (quoting McGarry v. Sax, 158 Cal.App.4th 983, 994, 70 Cal.Rptr.3d 519 (2008) (internal quotations omitted)).

2.   *Analysis*

To the extent that Defendant Goss argues that he cannot be held liable for an injury caused by the act or omission of another person, he is correct.  Cal. Gov. Code § 820.8.  However, it is undisputed that at some point during or immediately after the search, Plaintiff complained to Defendant Goss that he was being harassed and retaliated against by Defendant Emerson.  Although Defendant Goss' response is disputed, his liability stems from his own alleged inaction despite knowledge of the situation.  By its own terms, section 820.8 does not apply when the public employee seeking immunity has himself committed a wrongful act.

As noted above, it is undisputed that Defendant Goss had knowledge of Plaintiff's concerns related to Defendant Emerson's search. Defendant Goss contends that he investigated Plaintiff's allegations by going to Plaintiff's cell and determining that it had been searched appropriately. Goss Decl. ¶ 25. Plaintiff attempts to dispute this fact, but the evidence he relies on does not support his contention. Plaintiff points to various inmate declarations and states that his witnesses did not state that Defendant Goss went up to his cell to investigate. However, the witnesses' failure to affirmatively state this fact does not render the fact disputed. In other words, Plaintiff's witnesses do not declare that Defendant Goss *did not* go his cell and their silence on the issue does not create a disputed fact.

Therefore, the undisputed facts show that after Plaintiff complained to Defendant Goss, Defendant Goss went to Plaintiff's cell, examined it, and determined that the search was conducted property. Under these facts, Plaintiff cannot demonstrate "that no reasonable trier of fact could find other than for him." Soremekun, 509 F.3d at 984.

        C.        Qualified Immunity

Qualified immunity shields government officials from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982). "Qualified immunity balances two important interests - the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably," Pearson v. Callahan, 555 U.S. 223, 231, 129 S.Ct. 808 (2009), and it protects "all but the plainly incompetent or those who knowingly violate the law," Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092 (1986).

As the Court has found that no constitutional violation has occurred, it need not discuss the issue of qualified immunity.

VI. **CONCLUSION AND RECOMMENDATION**

For the reasons set forth above, the Court HEREBY RECOMMENDS that:

1. Plaintiff's motion for summary judgment, filed on January 15, 2014, be DENIED;

2. Defendant's motion for summary judgment, filed on January 29, 2014, be GRANTED, thus concluding this action in its entirety; and

3. Plaintiff's motion to strike is DENIED[11] as discussed throughout these Findings;

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within thirty (30) days after being served with these Findings and Recommendations, the parties may file written objections with the Court. Local Rule 304(b). The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections must be filed within fourteen (14) days from the date of service of the objections. Local Rule 304(d). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **May 9, 2014**                            /s/ Dennis L. Beck
                                                    UNITED STATES MAGISTRATE JUDGE

---

[11] The Court notes that the majority of the evidence at issue in Plaintiff's motion to strike/objections was not used in deciding the parties' motions for summary judgment.